AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of California

FILED
APR 17 2014
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Facebook Account
www.facebook.com/arelyrangel.643

Case No. '14 MJ8350

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the Southern District of California, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21 USC § 841(a)(1) | Unlawful possession with intent to distribute a controlled substance |
| Title 21 USC § 846 | |
| Title 21 USC § 843(b) | |

The application is based on these facts:
See attached affidavit of DEA Special Agent James E. Morris.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: __________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

James E. Morris, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4-17-2014 @ 9:45 a.m.

[signature]
*Judge's signature*

City and state: El Centro, CA 92243

Hon. PETER C. LEWIS, US Magistrate Judge
*Printed name and title*

# ATTACHMENT A

## DESCRIPTION OF LOCATIONS TO BE SEARCHED

Facebook, Inc. is an Internet service provider with its primary computer information systems and other electronic communications and storage systems, records and data located at Facebook, Inc., Attn: Security Department/Custodian of Records, 18 Hacker Way, Menlo Park, CA 94025

The property to be searched is a Facebook account assigned to:

**Target Account**: www.facebook.com/arelyrangel.643 with user name "arelyrangel.643" operated by Arely Rangel,

which is located at the following address:

Facebook Inc.
18 Hacker Way
Menlo Park, CA 94025

**ATTACHMENT B**

**I.** Service of Warrant

The officer executing the warrant shall permit Facebook, Inc., as custodian of the computer files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

**II.** Items subject to seizure

The following electronic records will be provided by Facebook, Inc. to the officer:

Subscriber and/or user information including basic subscriber information (referred to as Neoselect);

Expanded Subscriber Content (referred to as Neoprint) including profile contact information, mini-feed, status update history, shares, notes, wall postings, friend listing with friend's Facebook ID, group listing with Facebook Group ID, future and past events, and video listings with filename;

User Photos (referred to as User Photoprint);

Group Information;

Private Messages;

IP Logs;

and any other files associated with:

**Target Account**: www.facebook.com/arelyrangel.643 with username "arelyrangel.643" operated by Arely Rangel.

The search of the data supplied by Facebook, pursuant to this warrant will be

conducted as provided in the "Procedures for Electronically Stored Information" of the affidavit submitted in support of this search warrant and will be limited to seizing electronic data and attachments that are evidence of violations of Title 21, United States Code, Sections (USC) 841, 846, and 843(b):

a. User: Neoprint, Photoprint, contact information

b. Electronic mail/messages and attachments related to the identities of any co-conspirators.

c. Electronic mail and attachments that provide context to any electronic mail reflecting the criminal activity described in this warrant including any electronic mail sent or received in temporal proximity to any relevant electronic mail and any electronic mail that identifies any users of the subject account.

d. Internet Protocol (IP) Logs, sessions, dates, durations, and times

e. Messages, saved messages, drafted messages, pending messages, deleted messages, wall posts, "likes", "dislikes", friend requests

f. Events, Notes, and stored chats/instant messages.

g. Mobile photographic uploads, photographs shared/stored/saved, deleted photographs




**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

I, James E. Morris, being duly sworn, state:

**INTRODUCTION**

1. I make this affidavit in support of an application for a search warrant in furtherance of an investigation conducted by special agents of the U.S. Drug Enforcement Administration ("DEA") for a Facebook, Inc. ("Facebook") online account using the unique Uniform Resource Locator ("URL") link **www.facebook.com/arelyrangel.643** with user name "**arelyrangel.643**" (hereinafter "**Target Account**") operated by Arely Rangel ("RANGEL") located at 18 Hacker Way, Menlo Park, California, as described in Attachment A.

2. The purpose of the search warrant is to search and seize [1] property that constitutes evidence of the commission of controlled substance offenses under 21 U.S.C. §§ 841, 846, and 843(b); [2] contraband, fruits of crime, or things otherwise criminally possessed; and [3] property designed or intended for use or which is or has been used as a means of committing a criminal offense, as described in Attachment B.

3. The information contained in this affidavit is based on my personal experience and training, consultation with other special agents and other law enforcement officers. The evidence and information contained herein was developed from interviews with suspects, co-conspirators, queries of law enforcement databases, information gained through the use of consent searches, subpoenas, phone records, tolls, and historical cell site records, and personal knowledge of the on-going criminal investigation. Because this affidavit is submitted for the limited purpose of securing a search warrant as described herein, it does not include every fact known to me concerning the investigation.

**EXPERIENCE AND TRAINING**

4. I am a Special Agent with DEA and an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7). As such, I am empowered to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516. I have been so employed since February 2010. Prior to that I was an Immigration Enforcement Agent for Immigration and Customs Enforcement ("ICE") Detention and Removal Operations ("DRO") from April 2007 until January 2010.

5. I am currently assigned to the DEA Imperial County District Office ("ICDO") in Imperial, California. I am assigned to conduct investigations of criminal violations relating to the possession and transportation of controlled substances. I have received training in the conducting of narcotics investigations. I am familiar with narcotics traffickers' methods of operation including the distribution, storage, and transportation of narcotics and the collection of money proceeds of narcotics trafficking and methods of money laundering used to conceal the nature of the proceeds. I am familiar with, and have participated in, all of the normal methods of investigation including, but not limited to, surveillance, interviews, the use of search warrants, the use of confidential sources and informants, and the use of undercover agents.

6. I have conducted investigations regarding the unlawful importation, possession, and distribution of controlled substances in violation of Title 21, United States Code, §§ 952, 960, 841(a)(1), 843(b) and 846. During my career as a Special Agent with DEA, I have participated in investigations that have resulted in the seizure of multi-kilogram quantities of narcotics. Through these investigations, training, conversations with more senior agents and task force officers, and confidential informant debriefings, your affiant has become familiar with the

operations of large, highly compartmentalized Mexico-based illegal drug trafficking organizations operating in Mexico and the United States.

7. I have become familiar with the narcotics trafficking techniques and patterns used by drug trafficking organizations. I have had conversations with other more senior agents and law enforcement officers regarding their investigations and the results of their interviews. As a result, I am aware that narcotics traffickers use social networking facilities to negotiate narcotics prices, amount of narcotics, times for delivery and pick-up, directions for narcotics shipments, destination information, and the techniques used in narcotics transportation. Furthermore, I am aware that narcotics traffickers will often maintain extensive contact between the delivery destinations and the points of origin. I understand that professional organizations will usually maintain contact with other members of the drug trafficking organization through a communication network following a hierarchy from the source of supply down to the delivery driver. I am aware that narcotics traffickers often supply fraudulent information when subscribing to communication facilities, such as prepaid non-contract cellular telephones, and will frequently change communications facilities to undermine law enforcement efforts to intercept their communications.

8. Based upon my experience and training, consultation with other law enforcement officers experienced in controlled substances and financial investigations, and all the facts and opinions set forth in this affidavit, I know that:

   a. Individuals involved in drug dealing must often rely on others to obtain the controlled substances, transport and market the drugs. Evidence of the identities of these criminal associates is often maintained at their residence and/or place of business and/or online presence in the form of electronic mail or social media websites, such as Facebook.

b. Individuals involved in smuggling narcotics may communicate utilizing electronic mail and social networking sites such as Facebook to coordinate with co-conspirators in order to further their criminal activities. Narcotics smugglers also know that law enforcement can access records of phone calls, and believe that communicating via electronic mail or social networking sites provides greater insulation from law enforcement. Social networking sites and electronic mail are easily accessible from smartphones and other electronic devices. Because communication via social networking sites and electronic mail is instantaneous, it is convenient for individuals involved in the illicit smuggling and distribution of narcotics to communicate using electronic mail and sites such as Facebook. These communications may include, but are not limited to, communications referring to smuggling and distribution arrangements, smuggling routes, payment, types of drugs to be smuggled, methods of smuggling, delivery locations, communications referring to the acquisition of vehicles and or individuals to operate those vehicles, photographs, videos, and communications containing the names or co-conspirators and identifiers of communication facilities of co-conspirators, such as co-conspirator electronic mail addresses and phone numbers.

c. Individuals involved in drug dealing utilize cellular telephones to maintain instantaneous contact with co-conspirators and to conduct their criminal activity. Cellular telephones contain wire and electronic data concerning telephonic contact, text messages, and electronic mail messages with co-conspirators, as well as telephone books containing contact information for co-conspirators. Members of drug trafficking and distribution organizations also utilize cellphones with photograph and video capabilities to take

photographs and videos of co-conspirators, drugs, money, and assets purchased with drug proceeds.

d. Individuals involved in drug trafficking often take photographs of themselves, their associates, their property, and their contraband. Drug traffickers often maintain these photographs at their residences or in their vehicles or social media websites, such as Facebook.

e. Individuals involved in drug trafficking often communicate via social media websites such as Facebook, to locate and recruit possible future drivers of narcotic-laden vehicles, communicate with coconspirators and broker the sales of drugs to further drug trafficking enterprises. Among other things, private messages, instant messaging communications, and photographs are stored in the servers of the social media websites, which link to other people involved in drug trafficking activities.

**FACTS ESTABLISHING PROBABLE CAUSE**

9. On Friday, April 11, 2014, at approximately 11:00 A.M., United States Border Patrol Agents (BPAs) at the United States Border Patrol (USBP) Highway 86 checkpoint, located near Westmorland, California, were conducting secondary inspection duties with regards to a Transportes Intercalifornias Bus. BPAs conducting the inspection came into contact with Martha Alicia MARQUEZ (MARQUEZ). When asked, MARQUEZ presented her United States Passport as proof of her United States Citizenship. At this time, BPAs observed MARQUEZ's hands trembling as she presented her passport. BPAs asked MARQUEZ if she had crossed the International Boundary into the United States from Mexico. She responded that she and her friend Arely RANGEL (RANGEL) do not go into Mexico. BPAs contacted USBP El Centro Sector Communications to run checks on MARQUEZ, which revealed that she had crossed the international boundary

through the Calexico West Port of Entry that very day, April 11, 2014, as well as three additional crossings in the last six days. BPAs asked MARQUEZ and RANGEL to exit the bus for further questioning.

10.During questioning, BPAs Human Narcotics Detector Dog alerted to both MARQUEZ and RANGEL. When questioned, MARQUEZ and RANGEL stated that they had drugs strapped to their stomach. The packages contained a white crystallized substance which tested positive for the characteristics of methamphetamine weighing approximately 1.44 kilograms.

11.During the post arrest interview of RANGEL, she admitted to utilizing her Facebook account to communicate with an unidentified individual for the purposes of coordinating the delivery of the narcotics that were strapped to her.

12.After learning the above mentioned information, I attempted to locate the RANGEL's Facebook account. I specifically searched the name "Arely Rangel" on Facebook. There were at least three possible accounts that resulted from the search. I studied the arrest photograph of RANGEL. One of the three accounts contained multiple photographs of a person who appeared to be RANGEL. That account was **www.facebook.com/arelyrangel.643** with username **arelyrangel.643,** the TARGET ACCOUNT, which I believe is being utilized by RANGEL.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

13.I attempted to access RANGEL's Facebook user account page as recently as April 14, 2014. To this date, RANGEL's Facebook user account page has an open-to-the-public setting. I was able to view RANGEL's activities on Facebook, including posts, status updates, photos, and friend's lists. However, I was unable to review messaging to and from other Facebook profiles. RANGEL refused to grant consent to search her Facebook profile, which would have included the

messaging feature. RANGEL's statement, combined with the refusal makes your affiant believe that RANGEL utilized this private messaging feature to coordinate this narcotics load.

14. On April 14, 2014, I sent a preservation request to Facebook for the account with username **arelyrangel.643**.

## FACEBOOK, INC.

15. Facebook, Inc. is an Internet company which, among other things, provides electronic communication services to its subscribers. Facebook's electronic mail/communication service allows Facebook subscribers to communicate and share with other Facebook subscribers and with others through the Internet. Facebook subscribers access Facebook's services through the Internet.

16. Subscribers to Facebook use screen names during communications with others. The screen names may or may not identify the real name of the person using a particular screen name. Although Facebook requires users to subscribe for a free Facebook account, Facebook does not verify the information provided by the Facebook subscriber for its free services.

17. At the creation of a Facebook account and for each subsequent access to the account, Facebook logs the Internet Protocol ("IP") address of the computer accessing the account. An IP address is a unique address through which a computer connects to the Internet. IP addresses are leased to businesses and individuals by Internet Service Providers. Obtaining the IP addresses that have accessed a particular Facebook account often identifies the Internet Service Provider that owns and has leased that address to its customer. Subscriber information for that customer then can be obtained using appropriate legal process.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION

18. Federal agents and investigative support personnel are trained and experienced in identifying communications relevant to the crimes under investigation. The personnel of Facebook are not. It would be inappropriate and impractical for federal agents to search the vast computer network of Facebook for the relevant accounts and then to analyze the contents of those accounts on the premises of Facebook. The impact on Facebook's business would be severe.

19. Therefore, I request authority to seize all content, including profile contact information, mini-feed, status update history, shares, notes, wall postings, friend listing with friend's Facebook ID, group listing with Facebook Group ID, future and past events, and video listings with filename; User Photos (referred to as User Photoprint); Group Information; Private Messages; IP Logs; and any other content from the Facebook's accounts, as described in Attachment B. In order to accomplish the objective of the search warrant with a minimum of interference with the business activities of Facebook, to protect the rights of the subject of the investigation and to effectively pursue this investigation, authority is sought to allow Facebook to make a digital copy of the entire contents of the accounts subject to seizure. That copy will be provided to me or to any authorized federal agent. The copy will be forensically imaged and the image will then be analyzed to identify communications and other data subject to seizure pursuant to Attachment B. Relevant data will be copied to separate media. The original media will be sealed and maintained to establish authenticity, if necessary.

20. Analyzing the data to be provided by Facebook requires special technical skills, equipment and software. It also can be very time-consuming. Searching by keywords, for example, often yields many thousands of "hits," each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review

process. Certain file formats do not lend themselves to keyword searches. Keywords search text. Many common electronic mail, database and spreadsheet applications, which files may have been attached to electronic mail, do not store data as searchable text. The data is saved in a proprietary non-text format. And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases dramatically.

21.Based on the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months. Keywords need to be modified continuously based upon the results obtained. The personnel conducting the segregation and extraction of data will complete the analysis and provide the data authorized by this warrant to the investigating team within ninety (90) days of receipt of the data from the service provider, absent further application to this court.

22.Based upon my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize all electronic mails that identify any users of the subject account(s) and any electronic mails sent or received in temporal proximity to incriminating electronic mails that provide context to the incriminating mails.

23.All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

## CONCLUSION

24.Based on the foregoing, I submit that there is probable cause to believe that the items identified in Attachment B have been used in the commission of a crime and constitute evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841,

846, and 843(b), and that the foregoing will be found on the premises searched, as identified in Attachment A.

I declare under penalty of perjury that the foregoing is true and correct.

James E. Morris
Special Agent
DEA

Sworn to and subscribed before me this 17th day of April, 2014.

HONORABLE PETER C. LEWIS.
United States Magistrate Judge